77053, 77054. KUT-KWICK CORPORATION v. JOHNSON; and
vice versa.
(376 SE2d 399)

CARLEY, Judge.

Appellee-plaintiff Cecil Johnson is a former employee of appellant-defendant Kut-Kwick Corporation. Appellee brought suit against appellant, alleging that he had been discharged from his employment in violation of OCGA § 34-6A-1 et seq., the Georgia Equal Employment for the Handicapped Code (GEEHC). The case was tried before a jury and, at the close of appellee's evidence, appellant moved for a directed verdict. The motion was denied. At the close of all of the evidence, appellant renewed its motion for a directed verdict. The trial court denied the renewed motion and the case was submitted to the jury. The jury returned a verdict which found that appellee's em-

ployment had been terminated as the result of his handicap. Consistent with that finding, the trial court entered a judgment which awarded appellee back pay and attorney's fees. See OCGA § 34-6A-6 (b). In Case No. 77053, appellant appeals from the judgment entered for appellee. In Case No. 77054, appellee cross-appeals from the trial court's grant of a motion to make a technical amendment in those provisions of the final judgment which related to the award of attorney's fees.

## Case No. 77053

1. Appellant enumerates as error the denial of its motions for a directed verdict.

The record shows that appellee was hired by appellant in 1965. During his first year of employment, appellee lost an eye in a work-related incident. In 1978, appellee developed cancerous growths on his face and neck, which resulted in partial facial paralysis, disfigurement, and slurred speech. Appellee himself testified, however, that he had never been treated differently from appellant's other employees because of these physical conditions. Moreover, despite his loss of an eye and his cancer, it was not until 1983 that appellant's employment was terminated. The termination was ostensibly the result of appellee's failure to comply with appellant's company policy regarding employees' work absences. That company policy was as follows: "ATTENDANCE: We must have you here and on time. Any employee absent from work must call in, or at the end of the day a dismissal notice will be sent in. The employee, recently dismissed under this policy, may be rehired with or without the loss of pay status and with or without the loss of benefits at the discretion of his or her supervisor. . . . LEAVE OF ABSENCE: Granted in advance by management only, for a specific period of time."

Appellee urges that, under the evidence, the jury was authorized to find that his alleged violation of company policy was a mere pretext for the termination of his employment. The record shows that, on April 18, 1983, appellee was permitted to leave work early, having voiced health-related complaints which had no apparent connection with his pre-existing eye or cancer conditions. During the subsequent week, he complied with company policy by telephoning appellant each work day. On April 22, 1983, appellee was hospitalized. Again in compliance with company policy, he had someone call appellant on his behalf to report that his absence from work was the result of his admission to the hospital. There is, however, no probative evidence that appellant was ever informed why appellee was hospitalized. The evidence shows appellant was informed only that appellee had been admitted to the hospital. Appellee made no request for a leave of ab-

sence in connection with this hospitalization. However, appellant unilaterally determined that, based upon the information that it had received, it would nevertheless grant appellee a preliminary leave of absence until May 1, 1983, or until more information was forthcoming. Appellant's standard employee's "leave of absence" form was prepared. This form, which was identical to those by which appellee had been granted medical leaves of absence on numerous prior occasions, provided, in relevant part, as follows: "This leave of absence expires on 5-1-83 and if the employee does not report to work the following day he/she will be separated per company policy. Any extension to this leave of absence will require the approval of the management of [appellant] with a stated expiration date after which the employee will be separated if he/she does not report back to work."

Appellant did not apprise appellee that it had granted him the unsolicited preliminary leave of absence. It is clear, however, that, with regard to absences from work, company policy placed the burden upon the absent employee to contact appellant and that there was no burden upon appellant to contact its absent employees. It is undisputed that, throughout the week of April 25, 1983, neither appellee nor anyone acting on his behalf contacted appellant to report on his condition or to determine whether a medical leave of absence would be or had been granted. It is also undisputed that, based upon his past employment history, appellee was well aware of the company policy which required that an absent employee either make daily contact with appellant or, in the alternative, secure and comply with the terms of an authorized leave of absence. Having granted the unsolicited preliminary leave of absence, appellant did not use appellee's failure to report to work or to phone during the week of April 25, 1983 as a reason for terminating his employment. However, when appellee did not report for work or call appellant on May 2, 1983, the hospital was contacted. The hospital reported that appellee had been released. On May 3, 1983, appellee happened to be seen by his supervisor. Appellee was sitting in his truck in the parking lot of a convenience store. Thereafter, appellant removed appellee from its payroll effective May 2, 1983, appellee having been determined to be in violation of company policy by his failure either to report for work on that day or to request an extension of the unsolicited preliminary leave of absence.

"Cases brought under the GEEHC, the purpose of which is to protect individuals from discrimination by private employers on the basis of various handicaps and disabilities, are similar to those brought under Title VII, the federal provisions prohibiting discrimination in employment on the basis of race and sex. The existence of a prima facie case under the state statute will be most often determined by the formula similar to that announced in *McDonnell Douglas*

*Corp. v. Green,* 411 U. S. 792 (93 SC 1817, 36 LE2d 668) (1973). [Cit.]" *Shaw v. W. M. Wrigley, Jr. Co.,* 183 Ga. App. 699, 700 (1) (359 SE2d 723) (1987). "This formula is not an absolute, however, and has been altered to fit the facts of particular cases. With respect to cases involving discharge for violation of work rules, the plaintiff must establish that he was a member of [the] protected group [i.e., handicapped,] and then make a showing of some evidence to demonstrate either that he did not violate the rule or that, if he did, [nonhandicapped] employees who engaged in similar acts were not punished similarly. [Cits.]" *Capps v. Southeast Pkg. Corp.,* 612 FSupp. 419, 421 (1) (N.D. Ga. 1984).

The evidence demanded a finding that appellee had violated company policy. By his silence, appellee kept appellant totally uninformed as to his continuing absence from work. Although appellant had granted appellee an unsolicited preliminary leave of absence pursuant to its receipt of the general report of his hospitalization, appellee did not thereafter apprise appellant of the specifics of his treatment or his prognosis. Accordingly, on May 2, 1983, the date that appellee's unsolicited preliminary leave of absence for his hospitalization expired, all that appellant knew was that, notwithstanding the hospital's report of appellee's release, he had neither reported for work nor called in to explain why he had not done so. Company policy required that appellant be kept apprised of the reason for an employee's absence and, on May 2, 1983, appellant knew only that appellee's most recently given reason was apparently no longer valid. Appellee offered no viable excuse for his failure to comply with company policy. OCGA § 34-6A-4 (a) provides that the GEEHC "shall not be construed . . . to prohibit otherwise lawful employment practices or requirements merely because such practices or requirements affect a greater proportion of handicapped than nonhandicapped individuals within the area from which the employer customarily hires his employees." There is nothing unlawful in requiring that all employees, as a condition of their continued employment, keep their employer currently informed as to an absence from work. Accordingly, that handicapped employees may be expected to have more medically-related work absences than non-handicapped employees is no excuse for appellee's failure to have complied with appellant's company policy. "Sick leave insures employees against loss of pay if they are incapacitated from performance of duties due to illness or injury. It manifestly does not define or limit [an employer's] attendance standards." *King v. U. S. Postal Svcs.,* ____ FSupp. ____ (D.D.C. 1988) (construing the Federal Rehabilitation Act of 1973).

Since the evidence demanded a finding that appellee did violate appellant's company policy, the issue becomes whether appellee made a showing that non-handicapped employees who had committed simi-

lar violations were not discharged from their employment. *Capps v. Southeast Pkg. Corp.*, supra. The record shows that appellee did not meet his evidentiary burden. He "produced no evidence to rebut [appellant's] evidence that [he] was treated in the same manner as any other [of appellant's] employee[s] would be under the same circumstances." *Dugger v. Delta Air Lines*, 173 Ga. App. 16, 18 (325 SE2d 394) (1984). Absent some evidence of appellant's disparate enforcement of its company policy regarding employees' work absences, appellee was not entitled to have the case submitted to the jury. The GEEHC makes it unlawful to discriminate against handicapped employees. It does not make it unlawful to fail to discriminate in favor of handicapped employees. Accordingly, appellee could not rely upon the mere fact that he was handicapped as evidence which would authorize his recovery under the GEEHC. Appellant "certainly articulated a legitimate, non-discriminatory reason for the termination. According to [appellant] the sole reason for [appellee's] termination was the fact that [he violated company policy]. . . . [Appellee had] the opportunity to prove that this reason was merely a pretext for [handicap] discrimination. [Cit.] It is uncontradicted that [appellee] did commit the actions for which [appellant] states it terminated him and that those actions did constitute grounds for his discharge. [Appellee] . . . simply failed to introduce any evidence to suggest that the proffered reason [was] pretextual." *Capps v. Southeast Pkg. Corp.*, supra at 422 (3).

Appellee's further contention that appellant did not predicate its motions for a directed verdict upon the lack of sufficient evidence of disparate treatment is not supported by the record. It follows that the trial court erred in failing to grant a directed verdict in favor of appellant.

2. With one exception, appellant's remaining enumerations of error are moot by virtue of our holding in Division 1. Appellant enumerates as error the trial court's refusal to allow its answer to be amended so as to assert a counterclaim against appellee. Appellant did not file its motion for leave to amend until after the jury's verdict had been returned. Accordingly, the trial court did not err in denying appellant's motion. See generally *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 605 (203 SE2d 173) (1974).

## Case No. 77054

3. We have held in Division 1 that appellee is not entitled to prevail on his GEEHC claim. Accordingly, any error in making a technical amendment to that judgment is a moot question, since no judgment in appellee's favor was authorized. Therefore, appellee's cross-appeal must be dismissed.

*Judgment reversed in Case No. 77053. Appeal dismissed in Case No. 77054. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 15, 1988 —
REHEARING DENIED DECEMBER 5, 1988 —

*Ford & Harrison, E. Scott Smith*, for appellant.
*Evelyn H. Johnson*, for appellee.