A04A1878. BASKIN v. GEORGIA DEPARTMENT OF
CORRECTIONS et al.
(612 SE2d 565)

Smith, Presiding Judge.

Randall L. Baskin appeals two orders dismissing his personal injury and civil rights claims against the Georgia Department of Corrections (the Department) and Gary Martin, an employee of the Department. We affirm the trial court's dismissal of Baskin's claims against the Department for failure to comply with the provisions of the Georgia Tort Claims Act (GTCA), but we reverse the dismissal of Baskin's 42 USC § 1983 claim against Martin for failure to exhaust his administrative remedies.

1. We first consider the appellees' motion to dismiss the appeal.[1] In a question of first impression, we must decide whether the requirement for discretionary application provided in the Prison Litigation Reform Act survives the dismissal and refiling of a civil action under OCGA § 9-2-61. Because the Georgia courts have repeatedly held that a renewal action under that Code section is an action de novo, we deny the motion to dismiss.

On June 11, 1999, Randall Baskin, while an inmate in the Montgomery Correctional Institution, suffered personal injuries allegedly due to the wrongful conduct of a Department employee. On June 6, 2001, shortly before expiration of the statute of limitation, Baskin filed suit in Montgomery County. On January 10, 2002, he dismissed his action without prejudice. On July 3, 2002, Baskin refiled his complaint as a renewal action. At that time, he was no longer a prisoner.

The Prison Litigation Reform Act of 1996, OCGA §§ 42-12-1–42-12-9, provides: "Appeals of all actions filed by prisoners shall be as provided in Code Section 5-6-35." OCGA § 42-12-8. "Under OCGA § 42-12-8, appeals in all civil actions filed by prisoners now require the discretionary procedures set forth in OCGA § 5-6-35." *Botts v. Givens*, 223 Ga. App. 139 (476 SE2d 816) (1996). The Department

---

[1] Baskin has not responded to this motion.

contends that the viability of Baskin's action is completely dependent upon its relation back to the original complaint, because the renewal action was filed outside the statute of limitation. Therefore, the Department argues, Baskin should be "stuck with the scenario that existed on the day the claim was lawfully made within the statute of limitation[ ]."

However, the courts of this state have consistently held that "[a]n action renewed pursuant to OCGA § 9-2-61 (a) is an action de novo. It is not the same action as [the] one it succeeds, in the sense that it is not a continuation of the concluded action, although it must *be* substantially the same both as to the cause of action and as to the essential parties." (Citations and punctuation omitted; emphasis in original.) *Mumford v. Davis*, 206 Ga. App. 148, 149 (424 SE2d 306) (1992) (admissions in previous action pursuant to OCGA § 9-11-36 not available in renewed action). "The same cause may be renewed, recommenced, or brought over, but is in effect de novo, except that the statute of limitation does not run, provided it is brought within six months from the time of the dismissal. Accordingly, a renewal action is governed by those procedural rules which are in effect at the time it is filed." (Citations, punctuation and emphasis omitted.) *Archie v. Scott*, 190 Ga. App. 145, 146 (2) (378 SE2d 182) (1989).

When Baskin filed his renewal action he was no longer a prisoner, and this action de novo was not "an action filed by a prisoner" within the meaning of OCGA § 42-12-8. Baskin therefore was not required to follow the discretionary appeal procedures of OCGA § 5-6-35. Appellees' motion to dismiss is accordingly denied.

Appellees argue strenuously that public policy should forbid a prisoner's use of the renewal statute to avoid the application of the Act, and that our holding will enable prisoners like Baskin to avoid the effect of the laws of Georgia through the simple expedient of dismissing their action shortly before their release and refiling within six months.[2] We appreciate the logic of that argument, but this is an issue for consideration by the Georgia General Assembly, not this court.

2. The issue of ante litem notice under OCGA § 50-21-26, however, is a different matter. Renewal of the action did not alter or extinguish the condition precedent to suit that Baskin give the prescribed notice of claim "in writing within 12 months of the date the loss was discovered or should have been discovered." OCGA § 50-21-26 (a) (1). The provisions in effect at the time Baskin attempted to give notice required that he employ "certified mail, return receipt

---

[2] It will also, as noted below, enable those in Baskin's position to avoid the exhaustion of remedies requirement set forth in 42 USC § 1977e (a).

requested, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services." OCGA § 50-21-26 (a) (2) (1999).[3] "No action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection." OCGA § 50-21-26 (a) (3).

On December 23, 2002, the Department moved to dismiss Baskin's renewed complaint for failure to attach copies of the ante litem notices and proof of service under OCGA § 50-21-26 (a) (4), as well as failure to perfect service on both the Department and the Department of Administrative Services as required by OCGA § 50-21-35. On January 23, 2003, Baskin filed an amendment to his renewed complaint, purporting to attach "a copy of the Ante Litem notice which was sent to the Department of Corrections and the Department of Administrative Services, together with proof of mailing as required by law." But the amendment contained only certified mail receipts for letters directed to the Department of Corrections and the Attorney General. No certified mail receipt was attached with respect to the Department of Administrative Services, but only an almost illegible "customer copy" of a United States Postal Service Express Mail label, which bears no signature and no information in the block designated for "delivery" and "signature of addressee or agent."

"If a condition precedent to waiver of sovereign immunity has not been satisfied, then the trial court lacks subject matter jurisdiction and no valid action is pending to toll the running of the statute of limitation." (Citation and punctuation omitted.) *Dept. of Human Resources v. Nation*, 265 Ga. App. 434, 437 (594 SE2d 383) (2004) (holding action could not be renewed under OCGA § 9-2-61 (a)). See also *Grant v. Faircloth*, 252 Ga. App. 795, 796 (556 SE2d 928) (2001) (trial court failed to acquire subject matter jurisdiction because plaintiff did not give ante litem notice in accordance with the Georgia Tort Claims Act). While Baskin argues that he substantially complied with the notice requirements by delivering the notice via express mail, substantial compliance is not adequate.

> Strict compliance with OCGA § 50-21-26 (a) is required. By its own terms, the State Tort Claims Act must be strictly construed, and OCGA § 50-21-26 (a) specifically sets forth the manner in which and to whom the required notice must be given. . . . Therefore, the notice [Baskin] contends he made

---

[3] OCGA § 50-21-26 (a) (2) was amended effective July 1, 2000 to allow service by "statutory overnight delivery." Ga. L. 2000, p. 1589, § 3.

was not that specified in OCGA § 50-21-26 (a), and his claim was dismissed properly under OCGA § 9-11-12 (b) (1) because the trial court did not have subject matter jurisdiction over the action.

(Citations and punctuation omitted.) *Kim v. Dept. of Transp.*, 235 Ga. App. 480, 481-482 (2) (510 SE2d 50) (1998). Baskin's reliance upon *Doe #102 v. Dept. of Corrections*, 268 Ga. 582 (492 SE2d 516) (1997), and *Norris v. Dept. of Transp.*, 268 Ga. 192 (486 SE2d 826) (1997), is misplaced. In those cases, the Georgia Supreme Court *strictly* construed the provisions of the Georgia Tort Claims Act that "[n]otice of a claim shall be given in writing within 12 months," OCGA § 50-21-26 (a) (1), and that "[n]otice ... shall be mailed," OCGA § 50-21-26 (a) (2), to require mailing, rather than actual receipt, of the notice within the specified time limit. *Norris*, supra at 193; *Doe*, supra at 583-584 (3).

In *Ga. Ports Auth. v. Harris*, 274 Ga. 146 (549 SE2d 95) (2001), the Supreme Court held that a Federal Express delivery was the equivalent of personal delivery, noting that "[a]ppellee's documents establish that the notice was personally delivered to DOAS by an employee of Federal Express. That delivery is as valid as if appellee himself had hand delivered the document." Id. at 150. But in that case, a receipt was attached to the amended complaint in the form of a copy of the demand letter addressed to a named individual in the Risk Management Division of the Department of Administrative Services, stamped received on a specific date and bearing "the handwritten claim number assigned to appellee's claim by DOAS." Id. at 149 (2). Moreover, the Supreme Court added, "we disapprove the language in the Court of Appeals' opinion intimating that potential claimants may waive the express statutory requirement that a receipt be obtained for personally delivered ante litem notices and reaffirm that the GTCA must be strictly construed." Id. at 150.

Construing delivery by an employee of the Postal Service as the equivalent of "personal delivery" by an individual or a private courier service within the meaning of OCGA § 50-21-26 (a) (2) and *Harris* would seem to conflate the separate methods of delivery specified by the statute. But we need not reach that question, because Baskin presented no evidence of "a receipt obtained from the Risk Management Division of the Department of Administrative Services." OCGA § 50-21-26 (a) (2). The *Harris* court did not reach the issue of whether a Federal Express air bill constituted a receipt, id. at 150, but a blank and unsigned "customer copy" of a mailing label cannot be deemed "a receipt obtained" from the State agency.

Although Baskin attempted to amend his renewed complaint to attach copies of the letters and purported receipts, the amendment was filed one day beyond the thirty-day requirement of OCGA

§ 50-21-26 (a) (4). See OCGA § 1-3-1 (d) (3) (first day shall not be counted but last day shall be counted); *Stancil v. Kendrix*, 189 Ga. App. 909 (378 SE2d 417) (1989) (30-day period begun on October 6 ended on November 5). Dismissal under OCGA § 50-21-26 (a) (4) is without prejudice. Baskin, however, had already renewed his action once, and "if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once." OCGA § 9-2-61 (a).

The trial court correctly dismissed Baskin's claims against the Department.

3. We next consider Baskin's § 1983 claim against appellee Martin.[4] Ordinarily, as the trial court held, Baskin's failure to exhaust his administrative remedies would render his civil rights claims against appellee Martin subject to dismissal.[5] But the same dismissal and refiling de novo that avoided the dismissal of this appeal also removes the exhaustion of remedies requirement under 42 USC § 1977e (a). That Code section provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 USC § 1983) or any other Federal law, *by a prisoner confined* in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis supplied.) Although Georgia courts have not considered this question, the Eleventh Circuit has considered the issue at length in light of Congressional intent and the decisions of numerous federal circuit courts and concluded that "[i]t is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters." *Harris v. Garner*, 216 F3d 970, 975 (11th Cir. 2000). Decisions of federal courts are not binding authority on this court, but their reasoning may be persuasive, *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (458 SE2d 95) (1995), and we find the Eleventh Circuit's exhaustive review of the congressional record and federal case law persuasive. Baskin was not a prisoner at the time he filed the renewal action. Therefore, he was not required to exhaust his administrative remedies, and the trial court erred in dismissing his § 1983 claim on this basis.

---

[4] "§ 1983 claims cannot be asserted against a state agency or state officials acting in their official capacity." (Citations and punctuation omitted.) *Dollar v. Olmstead*, 232 Ga. App. 520, 522 (1) (502 SE2d 472) (1998).

[5] Prior decisions of this court held that a litigant need not exhaust administrative remedies prior to bringing a federal claim under 42 USC § 1983 in the Georgia courts. See *Allen v. Bergman*, 198 Ga. App. 57, 58 (1) (400 SE2d 347) (1990). But in 1996, Congress amended 42 USC § 1977e (a) to impose an unconditional requirement that prisoners exhaust all available administrative remedies prior to bringing § 1983 claims.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 22, 2005.

*Walter D. Adams*, for appellant.
*Thurbert E. Baker, Attorney General, Reagan W. Dean, David E. Langford, Assistant Attorneys General*, for appellees.