## A09A0047. TRANSPORT SOLUTIONS, INC. v. ST. PAUL MERCURY INSURANCE COMPANY.

(678 SE2d 201)

ANDREWS, Presiding Judge.

St. Paul Mercury Insurance Company, as subrogee of the shipper of goods carried by Transport Solutions, Inc., brought an action under the Carmack Amendment to the Interstate Commerce Act (49 USC § 14706) seeking damages from Transport Solutions after the interstate shipment was stolen in transit. Transport Solutions contends that the trial court erred by granting summary judgment in favor of St. Paul because there was no evidence in the record establishing that, when it took delivery of the goods for carriage, they were in good condition. We agree and reverse.

The Carmack Amendment controls the liability of a carrier for damage to or loss of an interstate shipment of goods, and generally preempts separate state-law causes of action by a shipper against a carrier for the lost or damaged goods. *Missouri Pacific R. Co. v. Elmore & Stahl*, 377 U. S. 134, 137 (84 SC 1142, 12 LE2d 194) (1964); *REI Transport v. C. H. Robinson Worldwide, Inc.*, 519 F3d 693, 697-698 (7th Cir. 2008); *Clark v. Messer Indus.*, 222 Ga. App. 606, 607-608 (475 SE2d 653) (1996). The Amendment codified

> the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.

(Citations and punctuation omitted.) *Missouri Pacific*, 377 U. S. at 137. To establish a prima facie case for recovery from a carrier for damage to or loss of an interstate shipment, the shipper must show (1) that the goods were delivered to the carrier in good condition; (2) that they arrived in damaged condition or were lost during transit; and (3) the resulting amount of damages. Id. at 138. Upon proof of a prima facie case, the burden of proof shifts to the carrier "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Id. at 138; *Fine Foliage of Florida v. Bowman Transp.*, 901 F2d 1034, 1039 (11th Cir. 1990).

St. Paul alleged that its insured and subrogor, Cuisine Solutions, Inc. (CSI), delivered 645 cartons of chicken entrees to the carrier, Transport Solutions, for shipment by ground from Alexandria, Virginia to a Wal-Mart in Terrell, Texas, and that, after the entrees were delivered to Transport Solutions for shipment, they disappeared during transit and were never found or finally delivered. In its order granting summary judgment, the trial court found that St. Paul established an unrebutted prima facie case for recovery against Transport Solutions by showing that CSI delivered the goods to the carrier in good condition; that the goods were lost by the carrier during transit, and by showing damages caused by the loss. Transport Solutions argues that there was no evidence sufficient to support the trial court's finding that CSI delivered the goods for shipment in good condition.

The only evidence produced by St. Paul on this issue was an affidavit in support of summary judgment from CSI's president in which he identified CSI business records attached to the affidavit, and stated that he had personal knowledge that CSI prepared the

YALE LAW LIBRARY

records in the regular course of business at or near the time of the recorded event. The attached business records were "sales acknowledgments" showing that the goods sold to Wal-Mart were chicken entrees contained in 645 "cases" in "6.3 oz. multipack[s]" with a total value of $82,560. The affidavit was sufficient to establish as an exception to the hearsay rule that the business records were admissible to show the goods sold to Wal-Mart. *Ingles Markets v. Martin*, 236 Ga. App. 810, 812 (513 SE2d 536) (1999); *Aon Risk Services v. Commercial & Military Systems Co.*, 270 Ga. App. 510, 511-512 (607 SE2d 157) (2004); OCGA § 24-3-14. But this evidence was not sufficient to establish the necessary element of proof that the goods were delivered to Transport Solutions in good condition.

The CSI business records showed that the chicken entrees were delivered to Transport Solutions in 645 "cases" containing "6.3 oz. multipack[s]." This showed that the contents of the shipment were in sealed containers not visible and subject to internal examination by the carrier. Where the shipment is not in a sealed container, the carrier has the ability and burden before and during shipment to ascertain the nature and condition of the shipment. *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F3d 997, 1003-1004 (11th Cir. 2003). In that case, the carrier's recitation of good condition and contents on a bill of lading may suffice as the necessary proof of condition. Id.; see *Carpet Transport v. Kenneth Poley Interiors, Inc.*, 219 Ga. App. 556-558 (466 SE2d 70) (1995). But where the shipment is in a sealed container and cannot be examined by the carrier, a bill of lading "can attest only to apparent or external good condition, and the shipper may reasonably be required to present some additional evidence of the condition of the goods at the time of delivery." (Citation and punctuation omitted.) *A.I.G. Uruguay*, 334 F3d at 1004. As to the additional evidence required, we recognize the rule established in the Eleventh Circuit stating that the evidence varies depending on whether the shipment at issue was damaged, but still identifiable, as opposed to being lost, destroyed, or damaged to such an extent that it cannot be determined what was contained in the shipment. Id.

When a sealed shipment is damaged in transit, but it can still be determined what was contained therein, then the only question is its original condition when it was delivered to the carrier, and "reliable, substantial circumstantial evidence of condition will suffice to prove a prima facie case." *A.I.G. Uruguay*, 334 F3d at 1004.[1]

---

[1] Although a bill of lading alone is not sufficient circumstantial evidence to show that a sealed container was delivered to the carrier in good condition, "a case may be made by a bill of lading that recites receipt of the sealed packages in good external condition, when coupled with damage of a kind which could not in the nature of things have occurred before the

> When the shipment was lost, destroyed, or damaged to such extent that it is impossible to tell what was contained in the shipment, then the question is not only the original condition of the shipment, but also the *contents* of the shipment. When a sealed shipment disappears or is destroyed, we cannot tell by looking at the remains of the shipment, if any, what it originally contained. Therefore, we have said in these circumstances that we require "direct" evidence of the original contents and condition of the shipment to prove a prima facie case. It is well settled that documentary evidence alone, such as a bill of lading, is insufficient to establish proof of delivery of the contents of a sealed container. Documents cannot suffice for prima facie proof of contents in sealed containers. The established rule requires the plaintiff to supplement documentary evidence with some form of direct evidence of the contents of a sealed container. Direct evidence, such as the testimony of an eyewitness to the loading of the container, is necessary to confirm the contents. A prima facie case should not rest on mere possibility.

(Citations, punctuation and footnote omitted.) *A.I.G. Uruguay*, 334 F3d at 1004-1005.

Nevertheless, the Eleventh Circuit also recognized in *A.I.G. Uruguay* that, given the automated nature of many modern businesses, it is unrealistic to expect some shippers to produce an actual eyewitness to remember and describe the contents of a particular shipment. Id. at 1007. In those cases, testimony properly identifying business records routinely made contemporaneously with the automated production, packaging and shipment of the goods at issue is considered sufficient to satisfy the "direct evidence" requirement. Id. at 1007-1008. For example, to support admission of relevant business records in *A.I.G. Uruguay*, the shipper produced testimony explaining how records were contemporaneously made to report its automated, production, packaging and shipping process for the goods. Id. at 1007. This rule recognizes that in some cases business records are more reliable than eyewitness testimony, and that it would be "an unfair and impractical burden to require [the shipper] to obtain eyewitness testimony . . ." to establish a prima facie case. Id. at 1007.

In the present case, St. Paul produced no bill of lading, but sought to establish the "good condition" element of a prima facie case by presenting evidence in the form of "sales acknowledgment"

---

shipment." (Citations and punctuation omitted.) *A.I.G. Uruguay*, 334 F3d at 1004.

business records showing the sale of the goods to Wal-Mart. Although the sales records refer to the goods as packaged, they do not purport to be contemporaneous records of automated processes by which the goods were produced and packaged for shipment. We find this evidence was not sufficient to establish that the lost goods were delivered to Transport Solutions in good condition. It follows that the trial court erred in concluding that St. Paul established an unrebutted prima facie case entitling it to summary judgment.

*Judgment reversed. Miller, C. J., and Barnes, J., concur.*

DECIDED MAY 12, 2009.

*Mozley, Finlayson & Loggins, Lisa R. Richardson*, for appellant.
*Gilchrist M. Gibson*, for appellee.